EMMA L. STANLEY AND HER HUSBAND v. JOHN F. CHAM-
BERLIN.

1. Notice to the agent is notice to the principal, if the agent comes to the
   knowledge of the fact while he is acting for the principal, in the course
   of the very transaction which becomes the subject of the suit. Such
   knowledge of the agent is imputed to the principal for the benefit of
   an innocent third party who has dealt with the agent in good faith.
2. The law will not impute turpitude to a principal by charging him
   with constructive notice, when he had no actual knowledge, for the
   benefit of one who sets up his own wrongful act in his defence.
3. An agent rented premises to the defendant, knowing that he intended
   to use them for gaming purposes; *held*, that the principal, who had no
   actual knowledge of such intended unlawful use, could disown the
   agent's contract, and recover, on a *quantum valebat*, for the use of her
   premises.

In error to the Monmouth Circuit.

Argued at June Term, 1877, before BEASLEY, CHIEF
JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiffs, *W. H. Lyon* and *I. W. Scudder*.

For the defendant, *Charles Haight*.

The opinion of the court was delivered by

VAN SYCKEL, J. This is a suit for a balance of rent
claimed to be due to the plaintiffs from the defendant, Cham-
berlin, for a house in New York city.

The case turns upon the correctness of the instruction given
by the judge to the jury, to the effect that if the agent of the
plaintiff, when he rented the premises to the defendant, Cham-
berlin, knew that they were to be used for an illegal purpose,
the plaintiff herself is chargeable with the knowledge which
her agent had, although such knowledge was not, in fact,
communicated to her. In discussing this question, it must be
assumed that the only authority to the agent was to let the

premises. This would not, *per se*, authorize an illegal letting. The agent being employed to do a legal act, there can be no implication that he was empowered, on behalf of his principal, to do anything prohibited by law.

Unless, therefore, the principal can be charged with constructive notice, the notice which her agent had, she may disown the illegal contract.

Persons dealing with the agent are, for most purposes, regarded as dealing with the principal, and, therefore, the cases, with great uniformity, hold that the knowledge of the agent is the knowledge of the principal, and that the principal must be charged with a knowledge of such facts as are communicated to the agent in the particular employment which has been committed to him. The following authorities are referred to: *Story on Agency* 148, *and notes; Dunlap's Paley's Agency* 262, *and notes; Cornfoot* v. *Fowke*, 6 *M. & W.* 358; *Cooper* v. *Slade*, 6 *H. of L. Cas.* 793.

The general rule is undisputed, that notice to the agent is notice to the principal, if the agent comes to the knowledge of the fact while he is acting for the principal, in the course of the very transaction which becomes the subject of the suit, for, upon general principles of policy, it must be taken for granted that the principal knows whatever the agent knows, since it would be a breach of trust in the latter not to communicate his knowledge to the former. There is no difference between personal and constructive notice, except in respect to the guilt, for if there were, it would enable the principal to avoid notice in every case, by employing an agent. *Bank of United States* v. *Davis*, 2 *Hill* 451.

The Court of Exchequer Chamber, in *Dresser* v. *Norwood*, 10 *Jur.* (*N. S.*) 851, June, 1864, by a unanimous decision, reversed the Court of Common Pleas, and held the advanced doctrine, that the principal was affected by the knowledge of the agent, acquired in other transactions than those belonging to his agency.

The extent, however, to which this doctrine of constructive notice should be carried will not be considered, for I appre-

hend that a consideration of the reason upon which the rule rests, that the principal is chargeable with the deceit, and with the knowledge of his agent, will show that it is not applicable to the case in hand.

In *Hern* v. *Nichols*, 1 *Salk.* 289, where a merchant employed a factor to sell silk for him, and the factor fraudulently sold one sort of silk for another, and the doubt was whether this deceit could charge the merchant, Chief Justice Holt was of opinion " that the merchant was answerable for the deceit of his factor, though not *criminaliter*, yet *civiliter ;* for, seeing that somebody must be a loser by this deceit, it is more reasonable that he that employs the deceiver should be a loser than a stranger." The principal and his agent are, for this purpose, completely identified.

And in Story on Agency it is said that good faith requires that the principal should be held bound by the acts of the agent, within the scope of his general authority, for he has held him out to the public as competent to do the acts, and to bind him thereby.

The maxim of natural justice here applies with its full force, that he who, without intentional fraud, has enabled any person to do an act which is injurious to himself or another innocent party, shall suffer the injury rather than the innocent party, who has placed confidence in him. Where one of two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and having authority in that matter, shall be bound by it. This is unquestionably the ground upon which the principal is made amenable for the conduct of his agent.

In every case to which my attention has been called, where the doctrine of constructive notice is maintained, the knowledge of the agent has been imputed to the principal for the benefit of a third party, who has dealt with the agent in good faith.

In such cases, it is well settled that, as between two innocent parties, public policy requires that the principal must bear the loss occasioned by the act of his servant.

Is the defendant, Chamberlin, in a position which entitles him to invoke, in aid of his defence, this rule of law?

If an action would lie against the plaintiff in this case, by the owner of the adjacent premises, for the injury thereto occasioned by the unlawful use of the plaintiff's premises, in such suit the extent to which the doctrine of constructive notice should be carried would be necessarily involved. But in this case the defendant, who has violated the law by appropriating the plaintiff's premises to a base purpose, without her actual knowledge or consent, seeks to set up his own turpitude in discharge of his liability for the rent. There is no pretence in this case that there was an express contract that the house might be used for gaming purposes; the allegation is, that the agent knew that the defendant intended so to use it. If, then, before the occupation commenced, the defendant had repented and failed to enter upon his illegal employment, there can be no doubt that the plaintiff would have been entitled to recover. The defendant certainly can gain no advantage to himself by executing his criminal design. In the law of agency the doctrine of constructive notice is intended to shield from loss an innocent party who deals with the agent in good faith; it has no application whatever to a case like the one now submitted to the court. The plaintiff would not be responsible to the public by way of indictment, without showing an actual knowledge of the intended wrongful use of his premises, and surely the law will not impute turpitude to him by charging him with a knowledge which he did not actually have, for the benefit of a defendant who sets up his own execution of such criminal design in his defence.

The knowledge of the agent cannot be regarded, in this case, as the knowledge of the principal, and therefore, the plaintiff, upon discovering what her agent had done, had a right to disavow his act. Whenever she discovered that her agent had transcended his power, she had a right to disclaim his act; and the fact that the defendant had occupied her premises for a long time, could not affect her right of repudiation. She could not take any benefit from the agent's

contract, because she must take it, if at all, *in solido*, with the taint upon it.

The repudiation must be absolute, and its effect is to sweep away the illegal agreement, and leave the case as though it had never been made. This is the inevitable result of the right of disclamation.

When, therefore, at the trial, she denied all knowledge of the illegal act of her agent, she must be held to have disowned his contract, and if she satisfied the jury of the truth of her statement, to have assumed the lawful attitude of one who is entitled to recover on a *quantum valebat*, for the use of her premises, occupied by the defendant, without any express agreement. There is nothing in this rule, inconsistent with good policy. The illegal contract is not enforced, nor is any one permitted to derive any advantage from it. We are now dealing with the rights of one who is assumed to be an innocent plaintiff, and, while she is permitted to recover when her premises have been used in a forbidden manner, it is upon the express ground that she has made no contract assenting to such use, and that the use was without her knowledge. Stripped of everything except that which can be charged against the plaintiff, the case presented is the simple one of an occupancy under a lawful, implied contract to pay a reasonable rent, in which the defendant seeks to evade liability by setting up that, without complicity with, or knowledge on the part of the owner, he devoted her premises to criminal purposes. This would clearly constitute no defence.

In my opinion, the judgment below should be reversed.